UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CIVIL ACTION NO. 3:12CV-00103-JHM

ACE CAPITAL LIMITED                                                                                    PLAINTIFF

V.

KEYSTONE SERVICES, INC. d/b/a
KENTUCKIANA NURSING SERVICE and
BEREKET HAILE                                                                                           DEFENDANTS

MEMORANDUM OPINION AND ORDER

Plaintiff, ACE Capital Limited, seeks a declaration by the Court that it has no duty to defend or provide coverage for Defendants, Keystone Services, Inc., d/b/a Kentuckiana Nursing Services and Bereket Haile, in an underlying action in the Jefferson Circuit Court. The Court ordered supplemental briefing on the issue of whether it can properly maintain jurisdiction over this action under the Declaratory Judgment Act. (See Order [DN 18].) The parties have filed their supplemental briefs. Therefore, this matter is ripe for decision.

I. BACKGROUND

On May 20, 2011, Penny Harbin, as next of friend of Kristopher Worthington, filed an action against Defendants and others in the Jefferson Circuit Court alleging that Defendant, Bareket Haile, assaulted and/or "improperly, carelessly, and negligently, hit Kristopher Worthington, on or about his body" on September 9, 2010. (Jefferson Circuit Court Complaint at ¶¶ 8-9; DN 1-3.) Plaintiff sought damages against Haile and his employer for the injuries suffered by Worthington. According to the state court complaint, at the time of the incident Haile was working in the course and scope of his employment with Defendant Kentuckiana Nursing Services and, as a result, Kentuckiana Nursing Services is vicariously liable for his actions. (Id. at ¶¶ 13-14.) The plaintiff in the state

court action alleges that Kentuckiana Nursing Services acted negligently in causing the incident, including "negligence in hiring, training, and supervising Bereket Haile." (Id. at ¶ 15.)

Defendants sought insurance defense from Plaintiff, ACE Capital Limited (hereinafter "ACE"), pursuant to the insurance policy issued by ACE providing Kentuckiana Nursing Services with professional liability insurance, commercial general liability insurance, and medical payments insurance. (Complaint at ¶¶ 21-25.) On September 1, 2011, Professional Claims Managers, Inc., a third-party claims administrator for ACE, issued Haile and Kentuckiana Nursing Services a reservation of rights letter reserving ACE's rights under the Policy to limit or deny a defense and/or indemnity to Haile. (Id. at ¶¶ 18, 20.) On November 21, 2011, Professional Claims Managers issued Haile a letter denying a defense and indemnity under the Policy. (Id. at ¶19.) ACE is presently defending Kentuckiana Nursing Services in the state court action subject to the reservation. (Id. at ¶ 20.) ACE has since filed this declaratory judgment action, seeking the Court's declaration on whether it owes Defendants a defense in the underlying state court action.

## II. LAW

A court's exercise of jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), is not mandatory. Bituminous Cas. Corp. v. J & L Lumber Co. Inc., 373 F.3d 807, 812 (6th Cir. 2004) (citing Brillhart v. Excess Ins. Co. of America, 316 U.S. 491, 494 (1942)). Instead, the Sixth Circuit has held that courts must examine five factors to determine whether a case is appropriate for declaratory judgment. Id. at 813. These factors are:

(1) whether the judgment would settle the controversy;
(2) whether the declaratory judgment action would serve a useful purpose in clarifying the legal relations at issue;
(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata";
(4) whether the use of a declaratory action would increase the friction between our

>federal and state courts and improperly encroach on state jurisdiction; and
>(5) whether there is an alternative remedy that is better or more effective.

Id. (citing Scottsdale Ins. Co. v. Roumph, 211 F.3d 964, 968 (6th Cir. 2000)(citations omitted)). The Sixth Circuit has "held in insurance coverage diversity cases that 'declaratory judgment actions seeking an advance opinion on indemnity issues are seldom helpful in resolving an ongoing action in another court.'" Bituminous, 373 F.3d at 812 (citing Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co., 791 F.2d 460, 463 (6th Cir.1986)). Further, the Sixth Circuit has emphasized that "such actions . . . should normally be filed, if at all, in the court that has jurisdiction over the litigation which gives rise to the indemnity problem. Otherwise confusing problems of scheduling, orderly presentation of fact issues and *res judicata* are created." Id. (citing Scottsdale Ins. Co., 211 F.3d 964; Grand Trunk Western R. Co. v. Consolidated Rail Corp., 746 F.2d 323, 326 (6th Cir. 1984)).

### III. DISCUSSION

Plaintiff urges the Court to exercise jurisdiction over this matter because all five of the Scottsdale factors counsel in favor of jurisdiction. Defendants disagree arguing that the Court should decline to exercise jurisdiction over this case because a balance of the Scottsdale factors weigh in not exercising jurisdiction over the insurance coverage dispute.

**A. Settlement of the Controversy & Clarification of Legal Relations**

In the context of lawsuits by insurance companies to determine policy coverage obligations, most courts consider the first and the second factors together. See Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 557 (6th Cir. 2008) (noting that "it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue"). However, as the parties have discovered, there is a split within the Sixth Circuit regarding each factor. One line

of cases suggests that the declaratory judgment action must settle the entire controversy that is ongoing in state court and clarify the legal relationship between all the parties. See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., 495 F.3d 266, 271 (6th Cir. 2007) (holding that the failure to resolve the controversy or clarify the legal relationship between all the parties in the underlying state case weighed against exercising jurisdiction). Another line of cases suggests that the declaratory judgment need only settle the controversy and clarify the relations between those involved in the declaratory judgment action. See Northland Ins. Co. v. Stewart Title Guar. Co., 327 F.3d 448, 454 (6th Cir. 2003) (holding that the first factor weighed in favor of accepting jurisdiction because the declaratory judgment would settle the insurance coverage issue between the parties).

The Sixth Circuit recognized this apparent conflict in Flowers, noting that "[t]he difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible." 513 F.3d at 555. The Court then went on to present an alternative explanation, stating that "the contrary results in these cases might also be explained by their different factual scenarios." Id. Specifically, where the Sixth Circuit required the declaratory action to resolve the entire controversy and clarify the legal relations between all parties, there were factual disputes regarding the insured that would have to be resolved in the declaratory judgment action. See, e.g., Bituminous Cas. Corp., 373 F.3d at 813 (recognizing a dispute as to whether the injured party was the insured's employee). In each of the cases where the Sixth Circuit reached the opposite conclusion, such factual disputes did not exist. See, e.g., Northland Ins. Co., 327 F.3d at 454.

Some federal courts are not persuaded by these Flowers explanations, finding that the Sixth Circuit has essentially adopted contrary, irreconcilable positions. See, e.g., Grange Mut. Cas. Co.

v. Safeco Ins. Co. of Am., 565 F. Supp. 2d 779, 787 (E.D. Ky. 2008). The Court shares many of these courts' concerns. However, there are factual distinctions between the lines of cases that post-Flowers courts have found important. See, e.g., Auto Owners Ins. Co. v. Aldridge, 2009 WL 4782115, *2–3 (E.D. Ky. Dec. 7, 2009). Therefore, this Court joins those cases in concluding that where the district court in the declaratory judgment action will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action, the declaratory action need only settle the controversy and clarify the legal relations between the parties in the district court. See Cincinnati Insurance Company v. Richie Enterprises LLC, 2013 WL 600174 (W.D. Ky. Feb. 13, 2013); Certain Underwriters At Lloyd's London v. Concord Health Systems Management Group, Inc., 4:09CV-00095-JHM, DN 24 (W.D. Ky. Jan. 20, 2010).

Under this standard, the Court finds the instant case more akin to Bituminous than Northland. Although ACE is not currently a party to the action pending in state court, resolution of ACE's declaratory judgment action in this case would require consideration of both legal and factual issues that will be litigated in the Jefferson Circuit Court. In the complaint filed in state court, Harbin on behalf of Worthington alleges that Kentuckiana Nursing is vicariously liable for the actions of its employee, Bereket Haile. In order to establish Kentuckiana Nursing Services's vicarious liability for Haile's actions, the Jefferson Circuit Court will have to address whether Haile acted "wholly or in part to further [Kentuckiana Nursing's] business." Papa John's Intern., Inc. v. McCoy, 244 S.W.3d 44, 52 (Ky. 2008).

Similarly, in the present case, ACE requests the Court to determine that it is not liable to provide a defense or coverage for *both* Haile and Kentuckiana Nursing under the criminal act exclusion of the Policy for the incident that occurred on September 9, 2010. The Policy in question

contains an exclusion for criminal acts which provides: "We will not defend any 'Claim' or pay any 'Damages' based upon, arising out of, directly or indirectly relating to or in any way involving . . . [a] criminal act or fraud or dishonesty committed by any 'Insured[.]'" (Policy Section II(A)(11).) Section III(B) of the Policy, defines "Insureds" in relevant part as "[y]our 'Employees' . . . but only for acts within the scope of their employment by you or while performing duties related to the conduct of your business." In examining whether or not the incident falls under the criminal act exclusion, the Court would be required to determine whether Haile's action was a "criminal act" and whether Haile was an "insured" under the Policy. Thus, to determine whether Haile was an "insured," the Court would be required to determine whether his actions were "within the scope of [his] employment by [Kentuckiana Nursing] or while performing duties related to [Kentuckiana's business]." Despite ACE's arguments to the contrary, resolving these questions would demand an inquiry into the facts underlying the state court civil action with respect to the vicarious liability claim against Kentuckiana Nursing, as well as potentially, Haile's state court criminal action. See Westfield Ins. Co. v. Siegel Foundations, 2011 WL 3489353, *4 (W.D. Ky. Aug. 9, 2011). "These inquiries would not merely require consideration of matters of law that could be cleanly separated from the state-law proceedings, but rather would require factual analysis that would give rise to the possibility of contradictory results in state and federal court." Id. at *4.

Furthermore, while hearing this case in federal court would clarify the legal relations between ACE and Defendants, it would not clarify the legal relations between all the parties in the state court action. As a result, it would not serve a "useful purpose." See Flowers, 513 F.3d at 557; Westfield, 2011 WL 3489353, * 4; Nautilus Ins. Co. v. Grayco Rentals, Inc., 2011 WL 839549, *4 (E.D. Ky. Mar. 7, 2011). Given the potential for inconsistent rulings, "[t]he state court can . . .

clarify these very same issues—perhaps better, with its state-law expertise and familiarity with this case." Nautilus Ins. Co., 2011 WL 839549, *4(citing AmSouth Bank v. Dale, 386 F.3d 763, 786 (6th Cir. 2004); Bituminous Cas. Corp., 373 F.3d at 813-814.).

Accordingly, the Court finds that the first two factors weigh against exercising jurisdiction.

### B. Procedural Fencing and Res Judicata

"The third factor is meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'" Flowers, 513 F.3d at 558 (citing AmSouth Bank, 386 F.3d at 788.). The Sixth Circuit has held that it is "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." Id. In this case, there is no evidence of a race for res judicata or an improper motive. If no evidence of procedural fencing or a race for res judicata is presented, then this factor is neutral, and does not weigh in favor of or against exercising jurisdiction. See Travelers Indemnity Co., 495 F.3d at 272; Grange Mut. Cas. Co., 565 F. Supp.2d at 789; Owens Ins. Co. v. Elder Heating & Air, Inc., 2010 WL 1418734, *4 (W.D. Ky. April 7, 2010).

### C. Increase of Friction and Improper Encroachment

As to the fourth factor, the Sixth Circuit has held that courts must analyze three additional sub-factors when determining whether an exercise of jurisdiction would increase friction between the federal and state courts. These factors are:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates

a resolution of the declaratory judgment action.

Bituminous Cas. Corp., 373 F.3d at 814–15 (citing Scottsdale, 211 F.3d at 968). The Court considers each sub-factor in turn.

The first sub-factor weighs against exercising jurisdiction because, as discussed above, there are factual issues from the underlying state court action that would be relevant to the Court's determination of the coverage question at issue in the present case. Similarly, the remaining sub-factors weigh against exercising jurisdiction. The Sixth Circuit has cautioned that "issues of 'insurance contract interpretation are questions of state law with which the Kentucky state courts are more familiar and, therefore, better able to resolve.'" Travelers, 495 F.3d at 273 (quoting Bituminous, 373 F.3d at 815). "'[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation.'" Id. at 273 (quoting Bituminous, 373 F.3d at 815). Additionally, this case is not likely to turn on federal common law or federal statutory law. Rather, state law will dictate the resolution of the state court action in Jefferson Circuit Court and state law will dictate a resolution of the issue in this declaratory judgment action. See Westport Ins. Corp. v. Al Bourdeau Ins. Servs., 2007 WL 2225874, *4 (E.D. Mich. Aug. 2, 2007). Just as in Travelers, "[t]his is not a case where federal law will come into play, and, therefore, a state court forum is preferable." Travelers, 495 F.3d at 273. Therefore, the Court finds that this factor weighs against exercising jurisdiction.

### D. Alternative Remedy

Finally, the Court considers the alternative remedies available to Plaintiff. Kentucky provides a declaration of rights procedure under KRS § 418.040. Bituminous, 373 F.3d at 816. A

declaratory judgment filed in state court would be a superior remedy here. "A Kentucky court would also be better suited than a federal court to resolve the issues in this case, which rest entirely on state law." Westfield Ins. Co., 2011 WL 3489353, *5 (citing Travelers, 495 F.3d at 272). "And a declaratory action in Kentucky state court could possibly be combined with the underlying tort action, allowing all issues in this case to be resolved by the same judge." Id. (citing Flowers, 513 F.3d at 562). For these reasons, the Court finds that this factor weighs against exercising jurisdiction in this case.

Accordingly, the Court finds that the balance of these factors weighs against exercising jurisdiction in the present case. Contrary to the arguments of the Plaintiff, this case does not present straightforward questions of state law. Thus, the Court declines to accept jurisdiction of this declaratory judgment action.

### IV. CONCLUSION

For the reasons set forth above, the Court declines to exercise federal discretionary jurisdiction over this declaratory judgment action. As a result of this decision, the motion by Defendant for a default judgment [DN 17] is **denied** as moot.

                                              **Joseph H. McKinley, Jr., Chief Judge**
                                              **United States District Court**

March 4, 2013

cc: counsel of record